CHANCERY                     **Goodloe *vs* Rodes, &c.**

*Case* 42.                 ERROR TO THE MADISON CIRCUIT.

                     *Trustees and trusts.   Executors.   Devisees.*

*October* 16.     CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

The case stated.     GREEN CLAY, who died about the 1st of November, 1828, having, some years antecedently to his death, verbally given to one of his daughters and her husband, *William Rodes,* the temporary possession and use of a tract of land containing about 400 acres, afterwards, by his will, since legally established, devised the tract to *Cassius M. Clay,* in trust for his said daughter and her infant children.

In December, 1828, after the probate of the will, the said *Rodes,* who was an acting executor thereof, finding that one *Estill* held a covenant on the testator, dated in 1811, for a part of the land thus devised to the use of his wife and children, bought that equitable incumbrance for $800, and obtained a written transfer thereof to himself, and afterwards, in February of the year 1832, in settling his executorial accounts, *Rodes* obtained a credit for the said sum of $800, as so much money advanced out of the assets for quieting the title of the devisees, and at the same time, or previously, endorsed on *Estill's* transfer to himself, the fact that the payment had been made by him as executor, and for securing a full effectuation of his testator's obligations and wishes.   In May, 1837, he executed his individual note to *Archibald W. Goodloe* for $3926, and in September, 1839, confessed a judgment for that amount, with intermediate interest.   To enforce that judgment, after a return of *nulla bona, Goodloe* filed a bill in chancery for subjecting the said tract of land or some portion thereof, alleging that *Rodes* had acquired from *Estill* and still held an equitable interest therein, so far at least as his *bona fide* creditors may be concerned.

That bill having been finally dismissed on the hearing, *Goodloe* has brought the case here for revision.

It seems to this Court that the decree is right.

1. As executor, *Rodes* had a right to remove the incumbrance created by the testator himself, on the title afterwards devised, without qualification, to *Mrs. Rodes* and her children, in a manner authorizing the presumption that he intended to secure to them the entire tract. Standing in that fiducial relation alone, he ought not to have bought that incumbrance for his own benefit; and had he done so and attempted to consummate such an equity, by forcing from the devisee in trust for his wife and children the legal title to his own use, we apprehend that a Court of equity would have hesitated to help him, otherwise than for the effectuation of the testator's provident purposes. And if he used the testator's funds, there could have been no difficulty in holding him as a trustee for the devisees.

2. But the more confidential and responsible relations of husband and father, and co-occupant and usufructuary of the devised land, imposed on him even stronger obligations to do nothing concerning the land for any other purpose than that of benefitting his testator's beneficiaries, placed by law and providence under his control and guardian care. And had he, whilst thus occupying the land, acquired for his own exclusive benefit, any adverse title to the land, equity would stamp it "*a trust.*"

From these considerations, connected with his entire conduct, we are inclined to the conclusion that *Rodes* bought Estill's equity, in fact, for the purpose of effectuating the testator's objects, and with the testator's funds, even though it may not be improbable that he had no such funds when he advanced the $800, and may have borrowed those identical dollars in his individual name.

But whatever may have been his intention when he obtained to himself Estill's transfer, he surely had a right, and was under a moral obligation at least, to hold or surrender it to the uses of the will, with a lien only upon it for the sum he had paid for it. And it is very clear, therefore, that his subsequent recognition of that obligation, by endorsing on the transfer the trust for which it was obtained, and reimbursing the $800 by obtaining a credit therefor as executor, should not be subjected to the imputation of constructive fraud on his creditors, had he

GOODLOE.
*vs*
RODES, &c.

An executor may properly apply the funds of the testator to remove incumbrances created by the testator, in his lifetime, on lands specifically devised, but may not purchase such incumbrance for his own benefit—and though in such case, the executor make the purchase with his own funds, yet a Court of equity will declare it a trust, and for the benefit of the devisee.

ble afterwards, with fraud on subsequent creditors, on conveying such purchased incumbrance to the devisees of the testator.

then been ever so deeply involved in debt. But there is no proof of his indebtedness, to any great extent, in February, 1832, and it does not appear that *Goodloe* was then one of his creditors, or that any other person, who may have been his creditor then, remains so yet. But had he been neither executor nor husband, nor father, nor tenant, and had he, thus isolated, obtained Estill's equity for himself alone, and with his own money, would he not have had a perfect right to sell that equity for the amount he gave for it, without incurring the denunciation of fraud? And would the simple fact that he was then indebted to others be sufficient proof of fraud to justify a cancelment of that sale even at the instance of his antecedent creditors? Certainly not.

Considering the case as free from any implied trust, and in every respect in the light most favorable to *Goodloe*, it does seem to us that the endorsement in 1832, should be deemed sufficient evidence of a transfer of Estill's equity to the beneficial devisees, and for the consideration of $800 refunded to *Rodes*; and even in this aspect of the case, there is no ground for presuming a fraud on creditors, and especially on *Goodloe*, who does not appear to have become his creditor until more than five years after the date of that transaction.

In no aspect of the case then, can we consider Estill's equity as being in *Rodes*, for his own exclusive use or for the benefit of *Goodloe* as his creditor; and under no circumstances that could be presumed to have occurred, should an equitable tribunal interpose in his behalf, to divest the devisees of an equity acquired for a valuable consideration, and fortified by so many trusts.

The decree is, therefore, affirmed.

*Owsley & Goodloe*, for plaintiff; *Robinson & Johnson* for defendants.